**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. | **IRIS JAMIE HURTADO,** | ) |
| | | ) |
| | **Plaintiff,** | ) |
| v. | | )  **CIV-14-** |
| | | ) |
| 1. | **OPTIM ONCOLOGY** | ) |
| | **OKLAHOMA, LLC,** | ) |
| 2. | **SURGICAL SPECIALISTS OF** | ) |
| | **OKLAHOMA,** | ) |
| 3. | **UROLOGY CENTERS OF** | ) |
| | **OKLAHOMA, P.C. d/b/a UROLOGY** | ) |
| | **CENTERS OF OKLAHOMA,** | ) |
| 4. | **OKLAHOMA MULTISPECIALTY** | ) |
| | **GROUP, and** | ) |
| 5. | **ACCORD HUMAN RESOURCES,** | ) |
| | | )  **JURY TRIAL DEMANDED** |
| | **Defendants.** | )  **ATTORNEY LIEN CLAIMED** |

**COMPLAINT**

**COMES NOW THE PLAINTIFF**, Iris Jamie Hurtado, and for her Complaint against the Defendants alleges and states as follows:

**PARTIES**

1.    The Plaintiff is Iris "Jamie" Hurtado, an adult female resident of Oklahoma County, Oklahoma.

2.    The Defendants are:

a.     Optim Oncology Oklahoma, LLC, an entity doing business in Oklahoma County, Oklahoma;

b.     Surgical Specialists of Oklahoma, an entity doing business in Oklahoma County, Oklahoma;

c.     Urology Centers of Oklahoma, P.C. d/b/a Urology Centers of Oklahoma an entity doing business in Oklahoma County, Oklahoma;

d.     Oklahoma Multispecialty Group an entity doing business in Oklahoma

County, Oklahoma; and

e.     Accord Human Resources, an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.     This is a cause of action arising out of Plaintiff's former employment with Defendants and is based on the following claims: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), and (2) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*).

4.     Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331.

5.     Plaintiff has exhausted her administrative remedies as to the above-listed claims by timely filing Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about August 12, 2013.  The EEOC issued Dismissal and Notice of Rights letters dated on or about January 22, 2014 to Plaintiff by mail (which Plaintiff received thereafter) and has timely filed this action within ninety (90) days of receipt of her notices of right to sue.

6.     The Defendants are located and can be served in Oklahoma County and/or Cleveland County and all acts complained of occurred in or around Oklahoma County and/or Cleveland County.  Oklahoma County and Cleveland County are located within the Western District of the United States District Court of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7.     Hurtado began her employment with Defendants in or around May 2011 as the Laboratory Manager at the Bethany Clinic.

2

8.      While employed with Defendants, Hurtado initially received pay checks and W-2 forms from Surgical Specialists of Oklahoma ("SSO").  Then, in or around September 2012, Hurtado began receiving pay checks from Accord Human Resources ("Accord"). Hurtado's 2012 W-2 was issued by Accord Human Resources.  During her employment, Hurtado was told that SSO merged with Optim Oncology and that Accord handled human resources functions for Optim Oncology.  Thereafter, Hurtado was performing work for Urology Centers of Oklahoma, P.C., d/b/a Urology Centers of Oklahoma ("UCO") and Optim Oncology at the Bethany Clinic.  Upon information and belief, UCO is a division of Oklahoma Multispecialty Group.

9.      Hurtado was initially supervised by Lab Director Dr. Charles McWilliams. However, in or around the Fall of 2012, Dr. Joseph Parkhurst became the Lab Director and Hurtado's immediate supervisor.

10.     In or around August 2012, Hurtado was notified that Phillip Malone had become the Practice Manager for several of Defendants' clinics, including the Bethany Clinic.  Hurtado was told that Malone had been hired by Optim Oncology.

11.     Following his hire, Malone treated Hurtado and other female managers differently than the male manager working for Defendants.  For instance, Hurtado was required to check-in with Malone regarding personal time off or time off for her employees. And, when Malone came to tour the Bethany lab, Malone insisted that a male subordinate of Hurtado's show him around, rather than Hurtado.  Malone also socialized with male managers and employees, but avoided speaking to Hurtado.

12.     Further, Malone spoke to Hurtado in a demeaning and condescending manner. Upon information and belief, other female managers were treated in a similarly negative fashion by Malone.

13.     In or around October 2012, Malone asked Hurtado the age of her children. Hurtado told Malone that her children were age 36, 34, and 25.  Malone responded that he did not know Hurtado was "that old."  Thereafter, Malone began asking about Hurtado's retirement plans, asking how long she intended to work.

14.     Further, Malone's communications with Hurtado became increasingly hostile. During meetings with Malone, he frequently raised his voice and threatened Hurtado with her job.  As a result, in or around February 2013, Hurtado asked Dr. Parkhurst to be present in meetings between Hurtado and Malone, in an effort to avoid Malone's hostility.

15.     Malone also got involved in the discipline of Hurtado's subordinates, although Hurtado previously disciplined her subordinates with only Dr. Parkhurst's approval.  For instance, Malone instructed Hurtado to terminate a sixty-eight (68) year old part-time employee over Hurtado's objections.

16.     Further, on or about May 22, 2013, Hurtado verbally counseled an employee for threatening another employee.  The employee being disciplined then threatened Hurtado. Thus, on or about May 27, 2013, Hurtado contacted Dr. Parkhurst to discuss further disciplining the employee.  However, on or about May 28, 2013, Malone yelled at Hurtado for not bringing the situation to his attention first.

17.     On or about May 30, 2013, Hurtado was terminated from her employment. Hurtado was told by Malone that she had allegedly abandoned her job.  However, such reason was false and merely pretext.

18.     Specifically, on or about May 30, 2013, Malone entered Hurtado's lab to investigate a complaint from the employee who threatened Hurtado. Hurtado was not comfortable meeting with Malone without Dr. Parkhurst.  Hurtado requested that Dr. Parkhurst be present, but Malone refused.  Feeling threatened by Malone's behavior in the

meeting (and previously), Hurtado left the meeting. She went to her desk for about fifteen (15) minutes, and then left the building for her typical thirty (30) minute lunch.

19.     Upon information and belief, Malone announced that Hurtado was "no longer a part of the company" while she was on her lunch break.

20.     At least two (2) employees told Malone that Hurtado was out to lunch when he asked where she went.  However, Hurtado was still terminated.

21.     Hurtado had not previously been required to notify any supervisor that she was taking her lunch break.

22.     Upon information and belief, Hurtado's job duties are now being performed by one (1) or more significantly younger individuals.

23.     As a direct and proximate result of Defendants' actions, Hurtado has suffered injuries as described below.

## COUNT I - ADEA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

24.     The matters alleged above constitute violations of the ADEA in the form of age discrimination.

25.     Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, she was over the age of forty (40), was qualified for her job, was disciplined and terminated, and her position was not eliminated.

26.     As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is also entitled to liquidated damages based upon Defendants' willful conduct.

## COUNT II - TITLE VII: Gender Discrimination

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

27.     The matters alleged above constitute violations of Title VII of the Civil Rights Act in the nature of gender discrimination.

28.     As damages, Plaintiff has suffered lost earnings, past and future, and emotional distress.

29.     Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

**PRAYER**

**WHEREFORE** Plaintiff respectfully prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and award compensatory damages, punitive damages, liquidated damages, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

Respectfully submitted this 21st day of April, 2014.

s/Jana B. Leonard
**JANA B. LEONARD, OBA # 17844**
**LAUREN W. JOHNSTON, OBA# 22341**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. Walker**
**Oklahoma City, Oklahoma 73139**
**(405) 239-3800 (telephone)**
**(405) 239-3801 (facsimile)**
**leonardjb@leonardlaw.net**
**johnstonlw@leonardlaw.net**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**